[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO DISMISS (#103)
This is an action for mandamus, wherein the Golden Hill Paugussett Tribe seeks a court order requiring the Governor of the State of Connecticut, Lowell P. Weicker, Jr., to begin negotiation of a trust agreement with the tribe as required by General Statutes 47-66h. A trust agreement "define[s] the powers and duties possessed by the tribe that is party to the agreement"; General Statutes 47-66h; and has been described as "a method for sorting out the present confusion on the part of the state and the tribes regarding what governmental actions are allowable to each or are required by each in a way that will be sensitive to the individual circumstances and needs of each tribe." Legislative Task Force on Indian Affairs, Report to General Assembly, February, 1990, p. 12.
The defendant has filed a motion to dismiss the plaintiff's action, arguing that the complaint is not CT Page 4095 justiciable. The defendant's motion is supported by a memorandum of law and other supplementary memoranda.
The plaintiff has objected to the motion, arguing that the complaint is justiciable and that the court can enter an order requiring the governor to enter into a trust agreement with the plaintiff tribe. The plaintiff has supported its objection with a memorandum of law and other supplementary memoranda.
Oral argument was heard by the court (Burns, J.) at short calendar on January 21, 1992.
The purpose of a motion to dismiss is to test the court's authority to hear the case before it. See Practice Book 142. Justiciability is properly raised in a motion to dismiss. See Pelligrino v. O'Neill, 193 Conn. 670, 673,480 A.2d 476 (1984), U.S. cert. denied 469 U.S. 875 (1985); State v. Stengel, 192 Conn. 479, 484, 472 A.2d 772 (1984). "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable." Hallas v. Windsor, 212 Conn. 338, 347, 562 A.2d 499 (1989). Justiciability requires:
 (1) that there be an actual controversy between or among the parties to the dispute; (2) that the interests of the parties be adverse; (3) that the matter in controversy be capable of being adjudicated by judicial power; (4) that the determination of the controversy will result in practical relief to the complainant.
Pelligrino v. O'Neill, supra 673 (citations omitted).
The plaintiff is seeking a writ of mandamus ordering the defendant to negotiate a trust agreement with the plaintiff tribe, arguing that the governor is required to enter into such an agreement pursuant to General Statutes 47-66h. This statute provides, in pertinent part, that
 the governor shall enter into a trust agreement with each willing indigenous tribe. Any such trust agreement shall define the powers and duties possessed by the tribe that is party to the agreement and shall be consistent with the recommendations on trust agreements contained in the final report of the Indian Affairs Task Force made pursuant to CT Page 4096 special act 87-103.
General Statutes 47-66h-(a). Special Act 87-103 establishes the existence and defines the duties of the Task Force on Indian Affairs (Task Force).
The defendant has made no claim that the case does not meet the first and second of the requirements for justiciability, actuality of controversy and adversity of the interests of the parties. Rather, the defendant contends that the matter "[cannot] be adjudicated by judicial power because there is no final report containing trust agreement recommendations"; Memorandum in Support, 3; and that no final report will exist in the future because the Task Force no longer exists, having concluded its legislatively authorized business. The defendant argues that such a report is a condition precedent and a jurisdictional prerequisite to the governor's duty to enter into a trust agreement, that in the absence of such a report the court cannot enter an order forcing the governor to enter into a trust agreement, and that the complaint is therefore non-justiciable.
A motion to dismiss is the proper vehicle with which to assert an alleged lack of subject matter jurisdiction. Practice Book 143(1). In ruling upon a motion to dismiss, the court should construe the allegations of the complaint in their most favorable light. Reynolds v. Soffer, 183 Conn. 67, 68
(1981). Every presumption favoring jurisdiction should be utilized; Conn. Power Light Co. v. Costle, 179 Conn. 415, 421
(1980); and the motion may be granted only if it is clear, on the facts of the record, that the court is without jurisdiction. Upson v. State, 190 Conn. 622, 624 (1983).
"A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. Such jurisdiction relates to the court's competency to exercise power, and not to the regularity of the court's exercise of that power." State v. Malkowski, 189 Conn. 101, 103,454 A.2d 275 (1983). "A trial court that has the competency to adjudicate what duties can be compelled by mandamus has subject matter jurisdiction." Connecticut Pharmaceutical Assn. Inc. v. Milano, 191 Conn. 555, 559, 468 A.2d 1230 (1983) (citations omitted).
It is clear that General Statutes 52-485 gives the superior court the authority to issue writs of mandamus, and thus to "adjudicate what duties can be compelled by mandamus." The Connecticut Superior Court is empowered to issue a writ of mandamus in any case in which a writ of mandamus may by law be granted to enforce the performance of a "plain positive duty," CT Page 4097 and will issue only to enforce a clear legal right where the person against whom it is directed is under a legal obligation to perform the act commanded. Sampietro v. Board of Fire Commissioners, 200 Conn. 38, 41, 509 A.2d 28 (1986). The writ is proper only when "(1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy" (citations omitted). Golab v. New Britain, 205 Conn. 17, 20,529 A.2d 1267 (1987). Mandamus will not issue to compel a discretionary duty vested in a public officer or public agency. Beccia v. Waterbury, 185 Conn. 445, 453, 441 A.2d 131 (1981); Clark v. Gibbs, 184 Conn. 410, 419, 439 A.2d 1060 (1981).
A motion to dismiss does not involve an inquiry into the merits of the case. See Reitzer v. Board of Trustees of State Colleges, 2 Conn. App. 196, 201, 477 A.2d 129 (1984). It is clear that the issues raised in the motion are germane to the issue of whether the plaintiff tribe will be ultimately entitled to a writ of mandamus in the alleged absence of a "final report", rather than the court's authority to make that determination. Thus, the alleged non-existence of a final report may affect the plaintiff's ability to establish that the law imposes on the governor "a duty the performance of which is mandatory and not discretionary", and that it "has a clear legal right to have the duty performed." However, these issues are more properly raised in a motion to strike, which may be used to challenge the legal sufficiency of a complaint, see Practice Book 152(1); LeConche v. Elligers, 215 Conn. 701,579 A.2d 1 (1990), or in a motion for summary judgment, Practice Book 384. Thus, this court, in reviewing the merits of the plaintiff's complaint, could find that a final report issued by the Task Force is a condition precedent to the governor's duty to enter into a trust agreement with the plaintiff tribe, or that the tribe is indeed entitled to the relief it is seeking. However, the existence or non-existence of Task Force recommendations is not a consideration which would deprive a court of the authority to make that determination; indeed, the court must take jurisdiction to do so.
The defendant cites Pelligrino v. O'Neill, supra, as authority for the proposition that the plaintiff's complaint is not justiciable. The plaintiffs in Pelligrino sought a judgment against the governor, the state treasurer, the state comptroller, the chief court administrator, the speaker of the House of Representatives, and the president of the Senate, declaring that the state's financing of the judicial system violated the plaintiffs' constitutional rights because of the delay in the disposition of their cases. Id., 672. The CT Page 4098 Supreme Court declined jurisdiction noting that while the plaintiffs' right to the administration of justice without delay was constitutionally protected, the constitution vested in the legislature the exclusive authority to create additional judgeships, a power that the legislature decline to exercise. Id., 678-681. The court concluded that "[j]ust as the exercise of judicial power by the legislature is constitutionally prohibited, so is the legislative power prohibited to the judiciary." Id., 679 (citations omitted). No such encroachment on legislative or executive power is presented in this case. The legislature itself enacted the statute imposing upon the governor the duty to "enter into a trust agreement with each willing indigenous tribe"; General Statutes 47-66h; a concomitant right was granted to the plaintiff herein; and it has vested in the judiciary the power to issue writs of mandamus to compel the doing of a duty prescribed by law; General Statutes 52-485. The defendant's motion to dismiss presents no issues subject to a "textually demonstrable commitment" to a coordinate branch of government, and therefore does not present the separation of powers concerns cited in Pelligrino, supra.
The existence or non-existence of Task Force recommendations on the subject of trust agreements does not affect the court's authority to hear the plaintiff's action, but instead impermissibly implicates the merits of the complaint. See Reitzer v. Board of Trustees of State Colleges, supra, 201. The plaintiff's complaint is, therefore, justiciable. The defendant's motion to dismiss is denied.
BURNS, J.