PATRICIA B. CROSS *v.* PAUL HUDON,
CONSERVATOR (ESTATE OF
HELEN A. BENNY), ET AL.
(14730)

Dupont, C. J., and O'Connell and Spear, Js.

Argued April 24—officially released July 2, 1996

*Vincent F. Sabatini,* with whom, on the brief, was *Sandra Rachel Baker,* for the appellant (substitute defendant).

*Vincent E. Roche,* for the appellee (plaintiff).

SPEAR, J. The defendant Karen Renzulli Lynch (defendant), successor administrator d.b.n.c.t.a., appeals from the $170,546.35 judgment of the trial court in favor of the plaintiff, Patricia B. Cross. The defendant claims that the trial court improperly found that (1) the plaintiff's action against the estate of Helen Benny was proper, (2) the plaintiff properly and timely substituted the executrix of Benny into the action upon Benny's death, (3) the plaintiff's action was timely brought pursuant to General Statutes § 45a-363,[1] and (4) the plaintiff

---

[1] General Statutes § 45a-363 provides in pertinent part: "(a) No person who has presented a claim shall be entitled to commence suit unless and until such claim has been rejected, in whole or in part, as provided in section 45a-360.

"(b) Unless a person whose claim has been rejected (1) commences suit within one hundred twenty days from the date of the rejection of his claim, in whole or in part, or (2) files a timely application pursuant to section 45a-364, he shall be barred from asserting or recovering on such claim from the

established a claim under the equitable theory of unjust enrichment. We disagree with the defendant's claims and affirm the judgment of the trial court.

The record discloses the following relevant facts. The plaintiff was the daughter and guardian of Helen Benny, a resident of Massachusetts. As guardian, the plaintiff expended her personal funds to pay for the care of her mother. Benny's estate consisted of two parcels of real estate located in Connecticut that were devised to her other daughter, Rosalie Benny Zanoni. On February 2, 1989, the Newington Probate Court appointed Paul Hudon as conservator of Benny's estate for the purpose of administering the two Connecticut parcels. In March, 1989, the plaintiff brought this action against Hudon as conservator seeking reimbursement for the funds she had expended caring for Benny.

Benny died on August 7, 1989. Pursuant to Benny's will, Zanoni was appointed executrix of Benny's estate. The plaintiff subsequently amended her complaint and, on January 9, 1990, substituted Zanoni as the defendant in lieu of Hudon. On January 31, 1990, the plaintiff filed a claim against Benny's estate that was denied by Zanoni, as executrix, on March 28, 1990. The Newington Probate Court subsequently removed Zanoni as executrix of the estate, and appointed Richard Pikor as administrator d.b.n.c.t.a. Pikor later resigned and the defendant was appointed as successor administrator d.b.n.c.t.a. By motion dated December 30, 1992, the plaintiff substituted the defendant in the action. The defendant filed a motion for summary judgment that was denied by the trial court on February 24, 1993.

After a trial, the court rendered judgment in favor of the plaintiff in the amount of $170,546.35, and this appeal by the defendant followed.

fiduciary, the estate of the decedent or any creditor or beneficiary of the estate, except for such part as has not been rejected. . . ."

I

The defendant first challenges the trial court's finding that the plaintiff properly brought suit against Hudon. The defendant argues that the plaintiff's suit against Hudon is improper because it is, in effect, a suit against Benny, her ward. The defendant principally relies on our decision in *Caron* v. *Adams*, 33 Conn. App. 673, 681, 638 A.2d 1073 (1994), for the proposition that "[i]t is a general rule that an action at common law cannot be maintained between a guardian and a ward . . . ." The defendant's reliance on *Caron*, however, is misplaced.

In *Caron*, the plaintiff, a ward of the state, instituted an action against his guardian, the commissioner of the department of children and youth services (DCYS), to recover damages for personal injuries sustained as a result of the guardian's alleged failure to provide services to disabled children. Because we found that the interests of the ward and his guardian "appear to have been adverse," we concluded that the statute of limitations for bringing such suit should be tolled until the court appointed a new guardian or until the plaintiff reached the age of majority. Id., 683.

In the present case, the plaintiff, as guardian, brought suit against her ward's conservator to recover personal funds that were expended caring for her ward. Unlike the suit instituted in *Caron*, the action here did not involve a direct claim between the guardian and the ward. Rather, the claim was brought by the plaintiff against the ward's conservator. This emerges as a crucial distinction when we examine cases from other jurisdictions that the defendant also cites in support of her argument that the plaintiff, as guardian, is precluded from instituting an action against her ward's conservator. See *Clarke* v. *Hickman*, 307 F.2d 660 (D.C. Cir. 1962); *Davis* v. *Davis*, 135 Miss. 214, 99 So. 673 (1924);

*Briggs* v. *Briggs,* 162 Tex. 177, 346 S.W.2d 106 (1961). In each of those cases, the guardian brought suit directly against the ward while the guardian retained control over the management of the ward's estate. Consequently, there existed an obvious conflict that warranted action by the court to cure the potential for inequity. That potential for inequity does not exist in this case because the guardian, who sought reimbursement from the assets of Benny's estate, had no control over those assets.

Furthermore, our Supreme Court has long recognized the right of a guardian to seek reimbursement for reasonable expenses incurred while caring for his or her ward. *Palmer* v. *Hartford National Bank & Trust Co.,* 160 Conn. 415, 279 A.2d 726 (1971); *Hewitt* v. *Beattie,* 106 Conn. 602, 138 A. 795 (1927); see also 39 Am. Jur. 2d, Guardian and Ward §§ 179, 181 (1968). Under the circumstances here, we conclude that the plaintiff properly brought suit against Hudon as conservator of Benny's assets.

The defendant claims, in the alternative, that even if the suit was properly brought, it abated upon the death of Benny because Hudon's conservatorship ceased by operation of law when Benny died. The defendant asserts that to preserve her claim against Benny's estate, the plaintiff was required to institute a new suit against the executrix of the estate.

We agree with the defendant that Hudon's conservatorship ceased upon the death of Benny. *Kleinman* v. *Marshall,* 192 Conn. 479, 483, 472 A.2d 772 (1984). This cessation, however, does not destroy the cause of action filed by the plaintiff. The plaintiff's action was not brought against Hudon personally, but against Benny's estate for funds personally expended by the plaintiff to care for Benny. "This suit was brought against [the estate of] a living individual during her lifetime to collect

a claim against her [estate] . . . . By her death, the cause of action was not lost nor destroyed nor even suspended. By the express terms of our statute . . . it survived and was continued against her [executor]." *Raymond* v. *Bailey*, 98 Conn. 201, 210, 118 A.2d 915 (1922). Likewise, we conclude that the plaintiff's suit against Hudon as conservator survived the death of Benny pursuant to General Statutes § 52-599.

Section 52-599 provides that "(a) A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person." Subsection (b) further provides that "[a] civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. . . . If a party defendant dies, the plaintiff, within one year after receiving written notification of the defendant's death, may apply to the court in which the action is pending for an order to substitute the decedent's executor or administrator in the place of the decedent, and, upon due service and return of the order, the action may proceed."

The defendant, relying on § 52-599 (b), claims that § 52-599 applies to save an action only when a party to that action dies. Because Benny was not a party, she argues that the action should not survive Benny's death. We disagree.[2] The plaintiff's action was brought against Hudon as a representative of Benny and her estate. The fact that the plaintiff sued Benny's fiduciary and not Benny for the collection of personal funds expended caring for Benny should not bar the application of § 52-599. The trial court correctly noted, in its memorandum of decision, that "[t]o say that the result in this case as

---

[2] We initially note that § 52-599 (a) clearly states that the death of "*any person*" shall not destroy a cause of action.

to survivorship of the action should be different because the original action was not brought against Benny as an individual . . . but against her conservator exalts form over substance." We, thus, hold that § 52-599 applies, and that the plaintiff's cause of action was not lost or otherwise destroyed when Benny died.

## II

The defendant next argues that, even if we conclude that § 52-599 applies to save the action, the plaintiff failed to substitute Zanoni into the action within the one year time limitation of § 52-599 (b).

In her answer to the plaintiff's substituted complaint, the defendant admitted the allegation made by the plaintiff in paragraph ten of the complaint. Paragraph ten alleges: "On January 22, 1990, *by agreement of the parties and order of the Court* (Freed, J.), Rosalie Benny Zanoni, as executrix was substituted as the party defendant in lieu of the conservator Paul Hudon who was allowed to withdraw." (Emphasis added.) "The admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader." *Rodearmel* v. *Rodearmel*, 173 Conn. 273, 275, 377 A.2d 260 (1977); see also *West Haven Sound Development Corp.* v. *West Haven*, 201 Conn. 305, 312, 514 A.2d 734 (1986); *Argentinis* v. *Gould*, 23 Conn. App. 9, 18, 579 A.2d 1078 (1990), rev'd in part on other grounds, 219 Conn. 151, 592 A.2d 378 (1991). Having judicially admitted that the parties agreed to substitute Zanoni into the action, the defendant cannot now complain that such substitution was improper.

## III

The defendant also claims that the plaintiff violated the time requirements of § 45a-363[3] by failing to commence a suit against Benny's estate within 120 days

[3] See footnote 1.

after the executrix rejected her claim. Accordingly, the defendant argues that the plaintiff should be precluded from recovering a judgment against the estate.

After Benny's death, the plaintiff filed a notice of claim. Zanoni, as executrix, rejected the claim on March 28, 1990. The plaintiff did not thereafter commence a new suit within 120 days nor did she file an application with the Probate Court pursuant to General Statutes § 45a-364.[4] Instead, the plaintiff pursued the original action she had filed prior to Benny's death. The dispositive issue is whether an action filed before the decedent's death that survives the death pursuant to § 52-599 eliminates the need for commencing a suit pursuant to § 45a-363. The defendant claims that the failure to file a new action violates the express language of § 45a-363. The plaintiff counters that the statute does not contemplate that she must reinitiate an action that is pending before the court. We agree with the plaintiff.

Our rules of statutory construction are well established. In construing statutes, we must use common sense and must not interpret statutes to yield bizarre and irrational results. *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 426–27, 572 A.2d 951 (1990); *Columbia Federal Savings Bank* v. *International Site Consultants, Inc.*, 40 Conn. App. 64, 69, 669 A.2d 594, cert. denied, 236 Conn. 910, 671 A.2d

---

[4] General Statutes § 45a-364 provides in pertinent part: "(a) Whenever a claim has been rejected, in whole or in part, as provided in section 45a-360, the person whose claim has been rejected may, within thirty days from and including the date of such rejection, make application to the court of probate to hear and decide such claim or, in the alternative, may apply to said court for the appointment of one or more disinterested persons . . . to be a commissioner or commissioners to hear and decide such claim. . . . The court may, in its discretion, grant the application, hear and decide such claim if the application so requests or appoint such commissioner or commissioners to hear and decide such claim. The court shall notify the applicant and the fiduciary of its action granting or denying the application within fifteen days after receipt of the application."

824 (1996). It would be irrational and, as the trial court noted, a "particularly draconian interpretation" to require the plaintiff, who had initiated an action prior to Benny's death, to file a new action upon Benny's death and upon the rejection of her claim when the new action would seek the same relief as requested in the original action.

We are further guided by our Supreme Court's decision in *Raymond* v. *Bailey*, supra, 98 Conn. 201. There, the court, in addressing an earlier statute that also required the presentment of claims prior to commencing suit, emphasized that "[t]here is no reason for the application of this statute to a claim which has already been presented to a person in a suit pending at the time of [her] death, in which [her] administrator is afterward substituted as defendant, either by his own motion or by process of scire facias under the statute of survival of actions. The terms of the [statute] plainly indicate that no such application was intended." Id., 211–12. Having already concluded that the plaintiff's action brought against the estate of Benny survived Benny's death, we now conclude that the commencement of that suit satisfies the requirements of § 45a-363 (b).

IV

The defendant last challenges the trial court's finding that the plaintiff established a claim under the equitable theory of unjust enrichment. She asserts that the plaintiff should not recover because she volunteered the funds for the care and maintenance of Benny. We are not persuaded.

" 'A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 399, 216

A.2d 814 [1966]. With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . *Providence Electric Co.* v. *Sutton Place, Inc.*, 161 Conn. 242, 246, 287 A.2d 379 (1971). . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the [recipients] were benefited, (2) that the [recipients] unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.' *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994)." *Barbara Weisman, Trustee* v. *Kaspar*, 233 Conn. 531, 550, 661 A.2d 530 (1995).

Moreover, the trial court's factual findings as to whether the plaintiff has established a claim under the theory of unjust enrichment "must stand . . . unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Citation omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, supra, 231 Conn. 283.

Applying these standards to the present case, we conclude that the trial court did not abuse its discretion in determining that the plaintiff was entitled to recover under the theory of unjust enrichment. No dispute exists as to whether Benny was benefited by the funds used by the plaintiff to care for her mother. The plaintiff made payments for Benny's nursing home care, medical expenses, and maintenance of Benny's property.

The defendant questions whether Benny "unjustly did not pay the plaintiff for the benefits . . . ." See

*Barbara Weisman, Trustee* v. *Kaspar,* supra, 233 Conn. 550. She claims that Benny neither requested such benefits nor knew that she was receiving them. The defendant argues that the plaintiff, instead, volunteered the funds as a gift to her mother, and, therefore, she, as Benny's fiduciary, should not be obligated to repay the plaintiff.

The trial court found that the plaintiff's financial contributions were not made with the requisite donative intent to constitute a gift. See *Devitt* v. *Manulik,* 176 Conn. 657, 663, 410 A.2d 465 (1979); *Kukanskis* v. *Jasut,* 169 Conn. 29, 34, 362 A.2d 898 (1975). This finding is not clearly erroneous. The evidence revealed that the plaintiff consistently wrote "loan" on the checks that were deposited into Benny's account. Such evidence supports the trial court's determination that the plaintiff lacked a donative intent. The trial court, therefore, properly rendered judgment in favor of the plaintiff under the theory of unjust enrichment.

The judgment is affirmed.

In this opinion DUPONT, C. J., concurred.

O'CONNELL, J., concurring. I concur in the result reached by the majority but do not agree with its analysis of the issue concerning the propriety of an action between a guardian and her ward.[1] The trial court should have applied the "general rule that an action at common law cannot be maintained between a guardian and a ward while that relationship exists." *Caron* v. *Adams,* 33 Conn. App. 673, 681, 638 A.2d 1073 (1994); 39 Am. Jur. 2d, Guardian and Ward § 160. One who stands in a fiduciary relationship to another should not by legal action destroy that trust as long as the fiduciary relationship exists. *Briggs* v. *Briggs,* 162 Tex. 177, 181–

---

[1] The suit against the conservator is treated as a suit against the ward for purposes of this concurrence.

82, 346 S.W.2d 106 (1961). If the plaintiff wanted to sue her ward, she should have resigned from her guardianship before bringing the action.

For a very practical reason, however, I do not urge reversal of this case. This action was commenced in March, 1989, scarcely five months before the death of the plaintiff's ward, at which time the guardianship terminated as a matter of law. See *Kleinman* v. *Marshall*, 192 Conn. 479, 483, 472 A.2d 772 (1984). This action continued and this appeal is pursued before us as an action by the former guardian against her mother's estate. Such an action is proper and nothing would be achieved by dismissing it because the plaintiff was acting contrary to what I believe to be long-standing law when she commenced the suit.

Accordingly, I concur with the majority.